21-2307-cv
*Suedrohrbau Saudi Co., LTD., et al. v. Bazzi, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

   At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8ᵗʰ day of February, two thousand twenty-three.

PRESENT: DENNIS JACOBS,
     RICHARD C. WESLEY,
     JOSEPH F. BIANCO,

       *Circuit Judges*.

_____

Suedrohrbau Saudi Co., Ltd., NACAP Pipeline &
Energy Beteiligungs GmbH (NPLE),

     *Plaintiffs-Appellants*,

     v.            21-2307-cv

Riad Bazzi, Souad Bazzi,

     *Defendants-Appellees*,

Lama Bazzi, Dana Bazzi, Maha Bazzi,

     *Defendants*.[*]

_____

FOR PLAINTIFFS-APPELLANTS:   ADAM FORD, Ford O'Brien, LLP, New York, NY.

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR DEFENDANTS-APPELLEES: PAUL M. KRIEGER (Katherine Cheng, *on the brief*), Krieger Kim & Lewin LLP, New York, NY.

Appeal from the judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants Suedrohrbau Saudi Co., Ltd. ("SRB"), a Saudi pipeline contractor, and NACAP Pipeline & Energy Beteiligungs GmbH (NPLE) ("NACAP"), its five-percent shareholder (collectively, "plaintiffs"), appeal from the district court's judgment, entered on September 8, 2021, dismissing plaintiffs' state law claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

Plaintiffs commenced this action on September 9, 2019, against Riad Bazzi, a former SRB employee in Saudi Arabia, as well as his wife Souad Bazzi (collectively, the "Bazzis") and their adult children. At its core, the complaint asserts that the Bazzis engaged in a pattern of fraudulent conduct that harmed SRB's finances, in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") and New York state law. On March 16, 2021, the district court dismissed NACAP's claims based on its lack of standing to sue and SRB's sole federal claim under RICO for failure to allege a domestic injury. Before addressing SRB's remaining state law claims, however, the district court *sua sponte* raised the issue of whether diversity jurisdiction existed over those claims because it was not inclined to exercise supplemental jurisdiction given the dismissal of the federal claim. The district court further noted that the parties disagreed over the Bazzis'

2

domicile for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiffs argued that diversity jurisdiction existed because the plaintiffs were foreign entities and the Bazzis were domiciled in New York when the complaint was filed. On the other hand, the Bazzis argued that they were domiciled in Lebanon, and diversity jurisdiction was thereby lacking given that there were foreign parties on both sides of the case. On September 7, 2021, following the parties' submission of supplemental briefs and an evidentiary hearing on this issue, the district court held that diversity jurisdiction was lacking, declined to exercise supplemental jurisdiction over the state law claims, and thus dismissed them. On appeal, plaintiffs do not challenge the district court's determination that NACAP lacked standing to sue, nor do they challenge the dismissal of SRB's federal claim. Accordingly, the sole issue on appeal is whether the district court erred in finding that the Bazzis were domiciled in Lebanon on the date that the complaint was filed and thus concluding that no diversity jurisdiction existed over SRB's remaining state law claims.

"We review factual findings in dismissals for lack of subject matter jurisdiction for clear error and legal conclusions de novo." *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1073 (2021), *reh'g denied*, 141 S. Ct. 1530 (2021); *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (explaining that a district court's "factual findings as to whether there has been a change of residence and whether that move was effected with the requisite intent of permanence may be overturned on appeal only if they are 'clearly erroneous.'" (quoting Fed. R. Civ. P. 52(a))).

"A party's citizenship for purposes of the diversity statute, 28 U.S.C. § 1332 (1994), is a mixed question of fact and law." *Palazzo*, 232 F.3d at 42. Diversity is "determined as of the date that suit is filed—the 'time-of-filing' rule." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999). In relevant part, 28 U.S.C. § 1332 requires "complete

3

diversity," meaning that "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014). "Diverse parties consist of citizens of different states or 'citizens of a State and citizens or subjects of a foreign state.'" *Tagger*, 951 F.3d at 126 (per curiam) (alteration adopted) (quoting 28 U.S.C. § 1332(a)(2)). However, "diversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002). Thus, "the presence of aliens on two sides of a case destroys diversity jurisdiction." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980). Moreover, a foreign citizen who resides in, and is a permanent resident of, the United States is "an alien for the purposes of diversity jurisdiction." *Tagger*, 951 F.3d at 126 (per curiam).

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo*, 232 F.3d at 42. Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (internal quotation marks and citation omitted). "At any given time, a person has but one domicile." *Palazzo*, 232 F.3d at 42. "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Id.* A change in domicile requires residence in a new domicile and the intention to remain there. *Id.* Questions as to a person's "intent to change, or not to change, his domicile from one state to another are factual questions." *Id.* (alterations adopted) (internal quotation marks and citation omitted). The "party alleging that there has been a change of domicile" bears the burden of proof "by clear and convincing evidence." *Id.* (internal quotation marks and citation omitted); *see also Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 56 n.3 (2d

4

Cir. 2019) ("As a general matter, Plaintiffs must prove complete diversity by a preponderance of the evidence, but a change in domicile by clear and convincing evidence.").

As a threshold matter, it is undisputed that SRB and NACAP are foreign corporate plaintiffs. The parties also do not dispute that the Bazzis were U.S. permanent residents, who resided intermittently in New York from 2011 until they became naturalized U.S. citizens in July 2019. Thus, until the date they obtained U.S. citizenship, the Bazzis were "alien[s] for purposes of diversity jurisdiction" under *Tagger*, even though they were lawful U.S. permanent residents. 951 F.3d at 126. The question at issue here is whether on the date that the complaint was filed in September 2019 (which was after the Bazzis obtained U.S. citizenship in July 2019), the Bazzis were domiciled in New York, such that diversity jurisdiction existed in this lawsuit by foreign plaintiffs.[1]

On appeal, plaintiffs principally argue that the district court "erred in crediting the Bazzis' self-serving testimony that their home and domicile was Beirut," because all of the documentary evidence established that in the years leading up to the filing of the complaint, the Bazzis' domicile was in New York. Appellants' Br. at 14–15. We disagree. In its thorough and well-reasoned decision, the district court did not simply rely upon the Bazzis' testimony in determining that their home and domicile was in Beirut but rather specifically found that "the Bazzis' testimony was neither contradictory nor unsupported; to the contrary, they offered consistent accounts of their intentions and relevant history, which were corroborated by extensive documentary evidence

---

[1] Although we held in *Tagger* that a foreign citizen who is also a U.S. permanent resident is not domiciled in the United States for purposes of 28 U.S.C. § 1332, that holding does not preclude a court from considering evidence regarding the person's residence and intent during that period of U.S. permanent residence to the extent it may assist a court in determining the person's domicile (including the intent to remain in the United States) once he or she became a U.S. citizen and, more specifically, at the time of the filing of a complaint in a civil case.

including real property records, travel itineraries, health insurance and medical records, social and religious practices, and licenses." Special App'x at 35.

To the extent that plaintiffs suggest that the district court clearly erred in finding the existence of such corroboration of the Bazzis' testimony, we find that argument and plaintiffs' related arguments unpersuasive. There is ample record evidence supporting the district court's finding that the Bazzis never intended to become domiciled in New York, even after they became U.S. citizens in July 2019, and that it was always their intent to return to Lebanon. In determining that intent, the district court evaluated a number of relevant factors, including the Bazzis' testimony and the uncontroverted documentary evidence that established that the Bazzis: (1) maintained, insured, and paid taxes on a significantly larger, family-sized home in Beirut throughout their residency in the United States; (2) extensively traveled back to Lebanon; (3) preserved strong social and familial ties in Lebanon; (4) owned a car in Lebanon; (5) repeatedly renewed their Lebanese identification cards; (6) paid for Lebanese medical insurance from at least 2011 through 2021 and received medical treatment in Lebanon; and (7) pursued weekly religious activities while in Lebanon. In addition, the district court found that, when the Bazzis did move back to Lebanon in August 2019 after acquiring U.S. citizenship, Riad Bazzi had their car serviced and obtained a Lebanese driver's license (prior to the filing of the lawsuit in September 2019), Souad received additional medical care, and they received visits from their daughters who traveled to Lebanon multiple times over the remainder of the year. On this record, we find no basis to disturb the district court's finding regarding the Bazzis' domicile. *See Palazzo*, 232 F.3d at 44 (affirming the district court's domicile determination and emphasizing that "[t]he weighing of the evidence is a matter for the trier of fact, not the court of appeals, and the 'clearly erroneous' standard of review is a deferential one").

Although plaintiffs point to the fact that the Bazzis owned property in Brooklyn since 2011 and spent a substantial amount of time in New York over the years, we have made clear that "residence alone is insufficient to establish domicile for jurisdictional purposes." *Van Buskirk*, 935 F.3d at 54; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another." (internal quotation marks and citations omitted)). Therefore, the district court acted well within its discretion in finding after an evidentiary hearing that, notwithstanding the Bazzis' ownership of the Brooklyn property and their periods of residency there, the overall record evidence established that they always had an intent to return to and remain domiciled in Lebanon.

Plaintiffs also contend that the Bazzis manipulated their domicile and engaged in litigation gamesmanship. To support this argument, plaintiffs relied upon the facts that, after the lawsuit was commenced in September 2019, (1) the Bazzis did not use the return portion of a New York–Beirut round trip ticket they purchased, and (2) they sold the Brooklyn apartment within six months. However, we discern no clear error in the district court's determination that these acts were not dispositive of the domicile issue and did not undermine its finding, based upon the entire record, "that the Bazzis were domiciled in Lebanon prior to the filing of the initial complaint and throughout this litigation." Special App'x at 36; *see Palazzo*, 232 F.3d at 44 ("The mere presence of evidence to support an inference contrary to that drawn by the trier of fact does not mean that the factual findings were clearly erroneous. . . . Decisions as to whose testimony to credit and as to which of competing inferences to draw are entirely within the province of the trier of fact." (internal citation omitted)).

Finally, the district court did not err in rejecting plaintiffs' argument that the Bazzis'

7

pursuit, and ultimate acquisition, of U.S. citizenship in July 2019—approximately two months prior to the filing of the complaint on September 9, 2019—constituted presumptive evidence of their intent to be domiciled in New York.  Plaintiffs contend that U.S. immigration regulations require that foreign citizens seeking U.S. citizenship satisfy certain residency requirements in the United States, and for purposes of these regulations, a foreign citizen's residence is the same as his or her domicile.  *See* 8 C.F.R. §§ 316.2(a), 316.5(a).  However, the meaning of "domicile" in the immigration context is not the same as in the diversity-jurisdiction context.  As the district court explained, the text of Section 316 states that it is only "applicable 'for [the] purposes of this chapter'—namely, the chapter setting forth 'General Requirements for Naturalization,'" Special App'x at 34 (quoting 8 C.F.R. § 316.5(a)), and "[i]t is axiomatic that the same word can have different meanings in different statutory schemes," *id.* (citing *United States v. Sterling Nat'l Bank & Tr. Co. of N.Y.*, 494 F.2d 919, 923 (2d Cir. 1974)).  Indeed, the district court noted that the regulation states that "domicile is a function of the 'principal actual dwelling place' for the period, 'without regard to the alien's intent' on a going-forward basis," *id.* (quoting 8 C.F.R. § 316.5(a) (emphasis omitted)), while for purposes of determining diversity jurisdiction, "the exact opposite is true; intent is paramount."  *Id.*  Thus, within the diversity jurisdiction framework, the district court found that "[t]he Bazzis demonstrated an intent to return to Lebanon" even after they obtained U.S. citizenship.  *Id.* at 29–30; *see Linardos*, 157 F.3d at 948 (explaining that domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." (internal quotation marks and citation omitted)).  As such, the district court correctly determined that the meaning of domicile within the immigration context did not control, nor did it create any presumption in the diversity jurisdiction analysis.

In sum, we conclude that the district court's finding that the Bazzis were not domiciled in New York at the time plaintiffs filed the complaint was not clearly erroneous. Therefore, the district court correctly determined that diversity jurisdiction was lacking over the remaining state law claims.

*          *          *

We have considered plaintiffs' remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court